**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **GRADY BROTHERS** | ) |
| **INVESTMENTS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 07-0747-WS-B** |
| | ) |
| **GENERAL MOTORS ACCEPTANCE** | ) |
| **CORPORATION,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This action, which was recently transferred to the docket of the undersigned, comes before the Court on plaintiff's Motion to Remand (doc. 7). The Motion has been briefed and is ripe for disposition at this time.[1]

**I.   Background.**

Review of the court file reflects that on or about September 14, 2007, plaintiff Grady Brothers Investments, LLC ("Grady") filed a First Amended Complaint against defendants General Motors Acceptance Corporation ("GMAC") and Mobile Mechanical Services, Inc. ("MMSI") in the Circuit Court of Mobile County, Alabama.[2] The lawsuit concerns certain real property in Brewton, Alabama that Grady purchased from GMAC in 1994. Prior to that sale, the First Amended Complaint alleges, GMAC retained MMSI to remove certain underground

---

[1]   In briefing the Motion, defendant GMAC has requested oral argument. Pursuant to Local Rule 7.3, the Court in its discretion may rule on any motion without oral argument. After careful consideration of the parties' detailed written submissions, the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the straightforward jurisdictional issues presented. Accordingly, the request for oral argument is **denied**.

[2]   This First Amended Complaint followed close on the heels of Grady's initial Complaint, which was filed on September 5, 2007. The state court file documents appended to the Notice of Removal (doc. 1) reflect that GMAC was not served with process on the original Complaint until September 17, 2007, some three days after Grady filed the Amended Complaint as of right. MMSI was served with process on September 28, 2007.

storage tanks from the property.  (First Amended Complaint, ¶ 5.)  The gist of Grady's claims is that, in performing this task, MMSI discovered "'gasoline-type' contaminants and other pollutants in the soil and sediment," but then failed to remediate that site to Alabama Department of Environmental Management ("ADEM") standards in removing the tanks.  (*Id.*, ¶¶ 5-7.) Notwithstanding its omission, MMSI allegedly "represented that it had remediated the site to ADEM's satisfaction and that such property was not contaminated and was not in violation of any environmental laws."  (*Id.*, ¶ 7.)  In addition to MMSI's misrepresentations on this point, the First Amended Complaint states, GMAC warranted to Grady in the purchase agreement for that property that, to the best of its knowledge, the property was not contaminated.  (*Id.*, ¶ 8.) Thirteen years after the sale, in March 2007, Grady allegedly performed soil and sediment testing on the property, which revealed the presence of "'gasoline-type' contamination and other pollutants" in the area where the underground storage tanks had been.  (*Id.*, ¶ 9.)  Plaintiff asserts that this contamination dates back to GMAC's ownership of the property and that defendants' failure to remediate it has subjected Grady to considerable expense and inconvenience in cleaning up the site.  (*Id.*, ¶¶ 9-10.)

Based on the foregoing allegations, the First Amended Complaint asserts exclusively state-law causes of action against defendants, including claims against GMAC for breach of contract, contractual or common-law indemnification, and misrepresentation, and claims against MMSI for "negligent closure of tanks" and misrepresentation.  As to MMSI, Grady alleges that MMSI "was negligent in the closure and removal of" the underground storage tanks, and that it negligently, knowingly misrepresented to GMAC and Grady that the contamination had been remediated, when in fact it had not.  (*Id.*, ¶¶ 17-20.)

On October 17, 2007, GMAC removed this action to this District Court pursuant to 28 U.S.C. §§ 1441 and 1446.  MMSI did not join in the removal of this action.  Despite the allegations of the First Amended Complaint that both Grady and MMSI are organized under the laws of Alabama with their principal places of business in Alabama, GMAC contends that federal jurisdiction is proper pursuant to the diversity provisions of 28 U.S.C. § 1332. Specifically, the Notice of Removal states that "MMSI has been fraudulently joined and should be disregarded for determining whether diversity jurisdiction exists in this case."  (Notice of Removal, ¶ 6(c).)  GMAC's position is that the applicable statute of limitations has long since

expired as to Grady's negligence cause of action because the negligence allegations relate to work performed by MMSI in or before February 1994.  As for the misrepresentation claim, GMAC contends that there is no possibility that Grady can prevail against MMSI because the purchase agreement between Grady and GMAC included an acknowledgment by Grady that no agent or representative of GMAC had made any representations concerning the environmental condition of the property, provided that the property was being sold "as is," and further included Grady's acknowledgment that it shall have fully examined and investigated to its full satisfaction the environmental condition of the property prior to closing.

Grady now seeks to remand this action to state court on the ground that complete diversity of citizenship is lacking because MMSI was not fraudulently joined and is an Alabama citizen, just as Grady is.[3]  The presence or absence of federal subject matter jurisdiction hinges on the pivotal question of whether MMSI has been fraudulently joined in these proceedings.

II.     **Analysis.**

A.     ***Standard for Motion to Remand.***

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must prove the existence of federal jurisdiction.  *See King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) (party asserting diversity jurisdiction "has the burden to prove that there is diversity"); *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate

---

[3]     Grady also argues in skeletal form that removal was not timely because GMAC "was served a copy of the Plaintiff's First Amended Complaint adding MMSI as a Defendant on September 14, 2007 ... more than 30 days prior to the filing of subject Notice of Removal." (Motion to Remand (doc. 7), ¶ 2.)  Plaintiff is correct that a notice of removal must be filed within 30 days after the defendant receives a copy of a pleading from which it may first be ascertained that the case is removable.  *See* 28 U.S.C. § 1446(b).  But the state court file reflects that GMAC was not served with process on the original Complaint until September 18, 2007, and that the certificate of service on the First Amended Complaint is dated September 19, 2007.  Furthermore, plaintiff's own exhibits to the Motion to Remand confirm that plaintiff's counsel did not fax a copy of the First Amended Complaint to GMAC until September 21, 2007.  (Doc. 7, at Exh. A.)  Regardless of whether GMAC's 30-day period began to run on the 18th, the 19th or the 21st of September, the Notice of Removal filed on October 17, 2007 was timely filed for purposes of § 1446(b).  Accordingly, plaintiff's request for remand on the basis of untimely removal is **denied**.

that federal jurisdiction exists") (citation omitted); *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998) ("In a motion to remand, the removing party bears the burden of showing the existence of federal jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).[4]

There being no federal question presented in the Complaint, GMAC predicated removal on diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (to qualify for diversity jurisdiction, complaint must establish "complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000"); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction ... [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

**B.     The Law of Fraudulent Joinder.**

The law is clear that § 1332 demands complete diversity, such that no plaintiff may be a citizen of the same state as any defendant. *See, e.g., Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required) (citation omitted); *Lowery v. Alabama Power*

---

[4]     *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

*Co.*, 483 F.3d 1184, 1198 n.31 (11th Cir. 2007) ("Section 1332(a)'s diversity requirement has been interpreted to require complete diversity among the parties."); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity - the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").[5]

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. Notwithstanding the complete diversity requirement, a non-diverse defendant who is fraudulently joined does not defeat diversity because his citizenship is excluded from the diversity calculus. Where fraudulent joinder exists, "the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence*, 484 F.3d at 1297. Under well established law, a finding of fraudulent joinder is appropriate in the circumstances presented here only if "there is no possibility the plaintiff can establish a cause of action against the resident defendant. ... The defendant must make such a showing by clear and convincing evidence." *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The burden on the removing party to prove fraudulent joinder is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see also Pacheco de Perez*, 139 F.3d at 1380 (same). In assessing a fraudulent joinder objection, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380.

Recently, the Eleventh Circuit summarized the fraudulent joinder inquiry as follows: "if there is any possibility that the state law might impose liability on a resident defendant under the

---

[5]     Of course, mere diversity is not sufficient to give rise to jurisdiction under § 1332. Rather, "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison*, 228 F.3d at 1261. The amount in controversy is assessed as of the date of removal. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal."); *Burns*, 31 F.3d at 1097 n.13 ("Jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal."). Because the complete diversity issue is dispositive of the Motion to Remand, the Court need not reach the amount in controversy prong of the jurisdictional test.

-5-

circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence*, 484 F.3d at 1299.[6]  Lending substance and depth to this "any possibility" language, the appellate court has explained that "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287; *see also Pacheco de Perez*, 139 F.3d at 1380 (mere "colorable claim" is sufficient to negate fraudulent joinder objection and to compel remand).  Nonetheless, it bears emphasizing that "[t]he potential for legal liability must be reasonable, not merely theoretical," in order to foil a fraudulent joinder theory.  *Legg*, 428 F.3d at 1325 n.5 (observing that possibility of liability is evaluated by reason and common sense) (citations omitted).[7]

The unambiguous directive emerging from the above authorities is that this Court's objective in evaluating the Motion to Remand is to "decide whether the defendants have proven by clear and convincing evidence that no Alabama court could find this complaint sufficient" to state a viable cause of action against MMSI.  *Henderson*, 454 F.3d at 1284.

### C.   Application of Fraudulent Joinder Principles.

In an attempt to meet its burden, GMAC advances a four-pronged approach.  First, it contends, Grady's claims against MMSI necessarily fail because MMSI owed no duty to Grady.  Second, according to GMAC, the 1994 purchase agreement between Grady and GMAC conclusively forecloses any reasonable reliance by Grady on any misrepresentations by MMSI concerning contamination on the property.  Third, GMAC argues that the misrepresentation

---

[6]      *See also Triggs*, 154 F.3d at 1287 ("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."); *GMFS, L.L.C. v. Bounds*, 275 F. Supp.2d 1350, 1353-54 (S.D. Ala. 2003) ("A defendant (typically a resident of the forum) is fraudulently joined if there is no possibility that the plaintiff can prove a cause of action against him.").

[7]      In weighing the parties' respective arguments, the Court examines "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."  *Legg*, 428 F.3d at 1322 (citation omitted).  In that respect, the procedural mechanism for resolving a fraudulent joinder objection is akin to that utilized on summary judgment.  *See id.*  No such affidavits or transcripts were filed in this case.

claims against MMSI are fatally flawed because they do not comport with the particularity requirements of Rule 9(b).  Fourth, GMAC asserts that plaintiff's claims against MMSI are time-barred as a matter of law.  None of these arguments can carry the day.[8]

        **1.**       ***Existence of a Duty.***

As a threshold matter, GMAC balks that MMSI could not possibly have owed a duty to Grady because MMSI was retained by GMAC to perform site work on property owned by GMAC.  It is of course true that Alabama law requires the existence of a duty as a prerequisite to imposing liability for negligence.  *See, e.g., RaCON, Inc. v. Tuscaloosa County*, 953 So.2d 321, 334 (Ala. 2006) ("It is axiomatic that the defendant in a negligence action must have a duty to the claimant."); *Ex parte Wild Wild West Social Club, Inc.*, 806 So.2d 1235, 1240 (Ala. 2001) (explaining that "where there is no duty, there can be no negligence") (citation omitted); *Legg*, 428 F.3d at 1324 ("Alabama's Supreme Court instructs that liability for negligent misrepresentation is predicated upon the existence of a duty") (citations omitted).  The *RaCON* court identified the following factors as determinants of whether a duty exists on the part of a party not in privity with the claimant in the construction context: (i) the extent to which the transaction was intended to affect the claimant, (ii) the foreseeability of harm to the claimant, (iii) the degree of certainty that the claimant suffered injury, (iv) the connection between the defendant's conduct and the injury, (v) the moral blame attached to such conduct, and (vi) the policy of preventing future harm.  *See RaCON*, 953 So.2d at 334-35 (listing factors); *Pritchett v. ICN Medical Alliance, Inc.*, 938 So.2d 933, 937 (Ala. 2006) (describing relevant factors as including nature of defendant's activity, parties' relationship, and type of injury or harm threatened).  Alabama courts have held, however, that "[t]he key factor is whether the injury was

---

      [8]     As an aside, the Court notes that most of these arguments would apparently apply with equal force to Grady's claims against GMAC as they do to Grady's claims against MMSI.  Moreover, these are the types of contentions that one might reasonably expect to see raised and litigated in a Rule 12(b) motion at the outset of the litigation.  Yet neither GMAC nor MMSI has filed a motion to dismiss; rather, both defendants have simply filed answers.  (*See* docs. 2, 8.)  If neither MMSI nor GMAC deems GMAC's arguments concerning timeliness, reasonable reliance and particularity (each of which would appear to favor dismissal of the claims against GMAC to the same or a similar extent as they do the claims against MMSI) sufficiently strong to warrant a Rule 12(b) motion, then it is unclear why GMAC maintains that those same arguments suffice to meet its elevated fraudulent joinder burden.

foreseeable by the defendant." *Pritchett*, 938 So.2d at 937 (citation omitted); *see also Wild Wild West*, 806 So.2d at 1240 ("The ultimate test of a duty to use care is found in the foreseeability that harm may result if care is not exercised.") (citation omitted).

Evaluating the factual allegations in the light most favorable to Grady, as is required at this stage, the Court finds that the pleadings support the existence of a duty of care owed by MMSI to Grady. A reasonable reading of the First Amended Complaint is that GMAC hired MMSI to remove the underground tanks on the property in connection with the pending sale to Grady. If, as the factual allegations reasonably suggest, MMSI knew GMAC was selling the property to Grady, then it was certainly foreseeable to MMSI that its lack of care in performing removal and remediation responsibilities would cause substantial harm to Grady, giving rise to a duty. More importantly, GMAC's position overlooks the point-blank allegation in the First Amended Complaint that MMSI negligently made misrepresentations to Grady concerning the closure and removal of the tanks.[9] Surely it would have been foreseeable to MMSI that if it negligently made false statements to Grady regarding environmental aspects of removal of the tanks, then Grady might rely on those representations in the sale transaction and thereby sustain harm. That is precisely what is alleged to have happened. As such, the factual allegations of the Complaint give rise to at least a colorable duty of care on the part of MMSI. GMAC's "no duty" argument is legally insufficient to show clearly and convincingly that no Alabama court could uphold Grady's state-law claims against MMSI.

## 2.  *Reasonable Reliance.*

Next, GMAC points to language in the 1994 purchase agreement between Grady and GMAC that it contends undermines Grady's claims against MMSI for misrepresentations concerning site contamination. In particular, GMAC points to the following contract provisions: (a) language that GMAC was selling the property "AS IS, WHERE IS" (Doc. 1, at Exh. A, ¶ 9);

_____

[9]      Paragraph 18 of the First Amended Complaint reads as follows: "Defendant [MMSI] was negligent in the closure and removal of said UST's and in regards to the ***misrepresentations made to GMAC and Grady concerning same***." (Emphasis added.) This allegation defeats GMAC's attempts to frame Grady's claims as relating exclusively to representations by MMSI to GMAC. (Opposition Brief (doc. 19), at 6.) At this stage, the undersigned cannot pick and choose among the allegations of the First Amended Complaint to weave a narrative in the light most favorable to GMAC for jurisdictional purposes.

(b) an acknowledgment by Grady that neither GMAC nor any of its agents or representatives had made any representations or warranties concerning the environmental condition of the property (*id.*); and (c) an acknowledgment by Grady that, by the time of closing, it would have fully examined and investigated the environmental condition of the property to its satisfaction (*id.*). GMAC contends that these contractual statements are irreconcilable with Grady's attempt to hold MMSI liable on a misrepresentation theory, because Grady could not possibly have relied on anything MMSI might have said concerning the environmental condition of the property.

Alabama law is clear that "[r]easonable reliance is an essential element of a misrepresentation claim." *Alabama Elec. Co-op, Inc. v. Bailey's Const. Co.*, 950 So.2d 280, 283 (Ala. 2006); *see also Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1264 (Ala. 2001) (fraud claim requires proof by substantial evidence that plaintiff "reasonably relied on the alleged misrepresentation").[10]  Applying this requirement, Alabama courts have found that "an 'as is' clause negates the element of reliance essential to any claim of fraud and/or fraudulent suppression." *Clay Kilgore Const., Inc. v. Buchalter/Grant, L.L.C.*, 949 So.2d 893, 898 (Ala. 2006).

Thus, GMAC's point is that Grady could not reasonably have relied on anything MMSI told it concerning environmental remediation at the property because the purchase agreement confirms that the property was being sold in "as is" condition, that no representative of GMAC had made any representations to Grady concerning the property's environmental condition, and that Grady had fully examined the property's environmental status to its satisfaction.  But Grady counters that defendant's argument overlooks the specially typed-in, separately initialed clause in the final agreement that reads as follows: "Seller warrants that to the best of its knowledge

---

[10]     "Reliance requires that the misrepresentation actually induced the injured party to change its course of action." *Hunt Petroleum Corp. v. State*, 901 So.2d 1, 4 (Ala. 2004). "If [the plaintiff] would have adopted the same course irrespective of the misrepresentation and would have sustained the same degree of damages anyway, it can not be said that the misrepresentation caused any damage, and the defendant will not be liable therefor." *Id.* (quoting *Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*, 390 So.2d 601, 611 (Ala. 1980)).  Thus, "for a plaintiff to state a fraud claim, he must show that a misrepresentation induced him to act in a way that he would not otherwise have acted, that is, that he took a different course of action because of the misrepresentation." *Id.* at 5.

that [*sic*] the property is not contaminated nor does it contravene any environmental law or regulation." (Notice of Removal, at Exh. A, ¶ 5; First Amended Complaint, ¶ 8.)[11]  According to Grady, the genesis of this clause was that MMSI made environmental assurances to Grady, after which Grady insisted on the insertion of the warranty clause by GMAC in furtherance of those assurances.  Grady's position is that this specific contract language trumps the boilerplate provisions in the Agreement and demonstrates that Grady was in fact reasonably relying on the representations of GMAC and its agents concerning the environmental condition of the property.

There is an obvious and palpable tension between the terms of the 1994 agreement in which Grady acknowledged that no assurances had been made to it concerning the environmental condition of the property, and that in which GMAC specifically warranted that it was unaware of any contamination or environmental non-compliance on the property.  Where such a problematic interaction between terms renders a contract ambiguous, the contract's meaning must be decided by a jury.  *See, e.g., Ex parte Harris*, 837 So.2d 283, 290 (Ala. 2002) ("once a court determines that an instrument is ambiguous or uncertain in any respect, it becomes a question for the factfinder to determine the true meaning of the contract"); *Vesta Fire Ins. Corp. v. Liberty Nat. Life Ins. Co.*, 893 So.2d 395, 403 (Ala.Civ.App. 2003) ("if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury") (citation omitted).  If it is determined in this case that the warranty provision was intended to override, supersede or modify the other provisions cited by GMAC, then surely it would have been reasonable for Grady to rely on the representations of GMAC and its alleged agent, MMSI, concerning the status of the property from an environmental standpoint.[12]  Accordingly, the undersigned finds that there is at least a

---

[11]    In briefing the Motion to Remand, Grady rebukes GMAC for ignoring this clause. Grady asserts, "Amazingly, in its 13-page paper GMAC never mentions or addresses" the warranty provision.  (Reply Brief (doc. 20), at 1.)  Grady's characterization is inaccurate, as GMAC specifically addresses that clause in footnote 2 of its memorandum in opposition to the Motion to Remand.  (Opposition Brief (doc. 19), at 5 n.2.)

[12]    To be clear, the Court is making a definitive, final determination neither that the 1994 agreement is ambiguous nor that the warranty provision governs.  Those rulings are reserved for the state court upon remand.  Rather, the Court is merely observing the existence of a reasonable possibility that the state court could deem the 1994 agreement ambiguous for the

possibility that Grady may be able to establish the reasonable reliance element of its misrepresentation claims against MMSI.  GMAC's fraudulent joinder objection predicated on alleged lack of reliance is therefore **overruled**.[13]

### 3. Rule 9(b).

As its third fraudulent joinder argument, GMAC maintains that plaintiff's misrepresentation causes of action against MMSI are inadequately pleaded under Rule 9(b) of the Federal Rules of Civil Procedure.[14]  In making this contention, however, GMAC overlooks

---

reasons stated above, and that the facts construed in the light most favorable to Grady might support a conclusion that the warranty provision was intended to trump the language in the agreement concerning "as is, where is," the absence of representations or assurances concerning the property's environmental condition, and the like.

[13]     Implicit in this finding is a rejection of GMAC's argument that the warranty language can be ignored because (a) it is not a part of the contract, and (b) it was not made by MMSI.  (Opposition Brief (doc. 19), at 5 n.2.)  As for the former contention, the standard of review at this stage is that all factual allegations are taken in the light most favorable to Grady; therefore, the admitted "factual dispute" as to whether that provision is actually a part of the 1994 agreement must be resolved in Grady's favor at this time.  As for the latter, GMAC misses the point.  If the contract allowed Grady to rely on GMAC's assurances of no known contamination, then there is at least a possibility that a state court could find that it was equally permissible for Grady to rely on like assurances by MMSI, who appeared to be acting as GMAC's agent or representative in its dealings with Grady.  As an alternate viable theory, suppose (as the facts of the First Amended Complaint reasonably support and as Grady alleges) that MMSI told Grady and GMAC that there was no contamination and no need for remediation on the site, after which the warranty language was inserted in the agreement to formalize those assurances.  In that event, there is at least a colorable argument that both Grady and GMAC were reasonably relying on MMSI's representations.  Under those circumstances, the reasonableness of Grady's reliance would not be trammeled as a matter of law by the agreement's boilerplate clauses cited by GMAC.

[14]     The better-reasoned case authorities have held that state rules of civil procedure govern for purposes of determining whether a particular defendant was fraudulently joined.  *See, e.g., Federal Insurance Company v. Tyco Int'l Ltd.*, 422 F. Supp.2d 357, 381 (S.D.N.Y. 2006) ("it is more appropriate to apply state law in evaluating the pre-removal joinder of claims and/or parties ... since the question is one of joinder in the state action before it was removed"); *In re Diet Drugs*, 294 F. Supp.2d 667, 673-74 (E.D. Pa. 2003) ("Federal law does not govern whether a plaintiff has stated a viable claim against a non-diverse defendant for purposes of fraudulent joinder.  Similarly, we do not see how federal joinder rules should apply when the issue is fraudulent misjoinder of non-diverse [defendants] in a state court action so as to defeat our diversity jurisdiction."); *Jamison v. Purdue Pharma Co.*, 251 F. Supp.2d 1315, 1321 n.6 (S.D.

-11-

Eleventh Circuit precedent counseling district courts that "[o]ur task is not to gauge the sufficiency of the pleadings" in the fraudulent joinder context, inasmuch as "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Henderson*, 454 F.3d at 1284.[15] The Court therefore declines GMAC's invitation to evaluate the sufficiency of Grady's pleading of its misrepresentation claims under Rule 9's particularity requirements.[16]

---

Miss. 2003) (observing that it makes little sense to say that a party's pre-removal joinder became fraudulent only after removal and only under the federal rule). For that reason, it is more appropriate to analyze the fraudulent joinder issue through the prism of the Alabama Rules of Civil Procedure. Fortunately, Rule 9(b) is identical under both the federal and Alabama rules.

[15]       Besides, it has generally been held that the remedy for failure to satisfy Rule 9(b) is not dismissal on the merits, but rather is an opportunity for the plaintiff to replead. *See generally Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (citation omitted). To be sure, "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). Nonetheless, it has been recognized that a court should not dismiss a claim for noncompliance with Rule 9(b) "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Thus, whether the First Amended Complaint satisfies Rule 9(b) is an ancillary procedural question divorced from the legal question animating the fraudulent joinder inquiry, to-wit: whether there is any possibility that plaintiff's claims against the non-diverse defendant are cognizable under state law. Regardless of the outcome of the Rule 9(b) inquiry, there is at least a possibility that (with or without repleading) Grady could state a viable misrepresentation claim against MMSI under Alabama law. No further examination of the Rule 9(b) issue is necessary at this juncture.

[16]       Even if a Rule 9(b) inquiry were properly undertaken as part of the fraudulent joinder analysis, GMAC would not prevail. The Alabama Supreme Court has explained that the Rule 9(b) particularity requirement means that "[t]he pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained." *Anderson v. Clark*, 775 So.2d 749, 752 n.5 (Ala. 1999) (citation omitted). A fair reading of the First Amended Complaint is that it alleges that MMSI made representations to Grady prior to the 1994 sale of the land that "it had remediated the site to ADEM's satisfaction and that such property was not contaminated and was not in contravention of any environmental laws," all to conceal its failure properly to remediate the site and to coordinate its activities with ADEM requirements. (First Amended Complaint, ¶ 7.) There appears to be at

### 4.    Timeliness.

Finally, GMAC asserts that Grady has fraudulently joined MMSI as a defendant in these proceedings because all of its claims against MMSI are time-barred.  Although GMAC offers a limitations argument with respect to both the misrepresentation cause of action and the negligence cause of action, examination of the timeliness of the misrepresentation claim suffices to defeat GMAC's fraudulent joinder objection.[17]

Under Alabama law, "[a] two-year statute of limitations applies to fraud actions." *RaCON*, 953 So.2d at 336; *see also Jones v. Kassouf & Co.*, 949 So.2d 136, 139 (Ala. 2006) ("In Alabama, any fraud claim must be brought within two years of the accrual of the claim.") (citation omitted).  GMAC's position is that any misrepresentation by MMSI must have predated the 1994 sale of the property, such that the time for Grady to bring a fraud claim against MMSI expired by no later than 1996, some 11 years before the Complaint was filed.  However, under the savings clause of Ala. Code § 6-2-3, Alabama law is quite clear that the two-year limitations period "begins to run when the claimant discovers the fraud." *RaCON*, 953 So.2d at 336.[18]  A fair reading of the First Amended Complaint is that Grady first discovered the allegedly false nature of MMSI's representations when testing performed on the property in March 2007

---

least a reasonable likelihood that an Alabama court would deem those allegations sufficient to satisfy Rule 9(b).  *See Henderson*, 454 F.3d at 1284 (under Alabama law, plaintiff must use more than "generalized or conclusionary" allegations of fraud so as to give fair notice to the defendant of the substance of the charges, but highly detailed averments are not necessary).

[17]    Any suggestion by GMAC that Grady failed adequately to ward off a statute of limitations defense in drafting its initial pleading cannot succeed, as a matter of law.  It is hornbook law that the statute of limitations is an affirmative defense which a plaintiff is not required to negate in the Complaint.  *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *Flying Food Group, Inc. v. N.L.R.B.*, 471 F.3d 178, 183 (D.C. Cir. 2006) (plaintiff is not required to negate affirmative defenses in complaint, and allegations to avoid or defeat such defenses lie outside burden of pleading); *Thomas v. Independence Tp.*, 463 F.3d 285, 293 (3rd Cir. 2006) (rejecting unprecedented notion that plaintiff is required to plead allegations negating an affirmative defense).

[18]    "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3.

indicated the presence of pollutants on the property dating back to GMAC's ownership.  Of course, Grady filed this lawsuit against MMI within months after conducting that testing, such that Grady contends its claims are timely under the § 6-2-3 savings clause.

Faced with Grady's reliance on § 6-2-3, GMAC argues that the discovery rule cannot save the claims against MMSI.  According to GMAC, Grady should have discovered the misrepresentation at or before the 1994 closing date for the property because Grady was on "inquiry notice of any defect in the environmental condition of the property" at that time.  (Doc. 19, at 12.)  There are three insuperable legal flaws in this reasoning.  First, it ignores the Eleventh Circuit's admonition that "[o]rdinarily, where the viability of a plaintiff's claim against a non-diverse defendant depends on whether section 6-2-3's savings clause applies, the case should be remanded summarily; such a question is emphatically a matter for the state courts to decide."  *Henderson*, 454 F.3d at 1282.  Second, it would have the Court disregard the Alabama Supreme Court's clear instruction that "[t]he question of when a party discovered or should have discovered the fraud is generally one for the jury."  *Jones*, 949 So.2d at 140 (quoting *Potter v. First Real Estate Co.*, 844 So.2d 540, 546 (Ala. 2002)); *see also Gilmore v. M & B Realty Co.*, 895 So.2d 200, 210 (Ala. 2004) (same).[19]

Third, GMAC fails to explain how Grady was on "inquiry notice" of alleged misrepresentations by MMSI prior to March 2007.  Remember that, viewed in the light most favorable to plaintiff, the pleadings allege that MMSI lied to Grady in 1994 about environmental contamination and remediation, and that in furtherance of that misrepresentation GMAC

---

[19]     The *Jones* court explained that application of § 6-2-3 can be decided as a matter of law "upon the first of either the actual discovery of the fraud or when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud."  949 So.2d at 140 (citation omitted).  Viewing the factual allegations of the First Amended Complaint in the light most favorable to plaintiff, Grady did not discover the alleged misrepresentation until March 2007.  Thus, the "actual discovery" test cannot avail GMAC at this stage.  As for when Grady should have discovered the fraud, Alabama law allows a court to decide that question as a matter of law "where the plaintiff knew of facts that would have put a reasonable person on notice of the alleged fraud."  *Stockton v. CKPD Development Co.*, 936 So.2d 1065, 1082 (Ala.Civ.App. 2005) (citation omitted).  The pleadings construed most favorably to Grady do not demonstrate any knowledge of facts that would have placed it on notice of MMSI's alleged misrepresentations prior to March 2007; therefore, this question is, at a minimum, for the jury to decide.

specifically warranted to Grady in 1994 that to the best of its knowledge there was no contamination on the property.  Apparently, GMAC would find inquiry notice by disregarding these facts and instead stressing contract language regarding Grady's obligation to investigate the environmental condition of the property to its full satisfaction prior to closing.  Nothing in the contract required Grady to go to the property and perform its own soil sampling for contamination.  Rather, any contractual duty to investigate could have been fully performed simply by Grady asking MMSI (the GMAC contractor who had removed the tanks and tested for contamination on the site) whether any contamination remained on-site.  This, apparently, is precisely what Grady did, and MMSI answered negatively.  Furthermore, GMAC (the property owner) expressly warranted that it was unaware of any contamination at that time.  Given these facts, why would Grady have inquired further?  Clearly, those circumstances did not place Grady on "inquiry notice" as a matter of law that MMSI was misrepresenting the truth, much less oblige Grady to investigate further to explore the veracity of MMSI's alleged misrepresentations.  Simply put, nothing in the facts before the Court suggests that Grady had any reason to believe prior to March 2007 that MMSI had misled it.

For all of these reasons, the Court readily concludes that there is at least a possibility that an Alabama state court could find that Grady's misrepresentation claims against MMSI are not time-barred, and that Grady brought this action within two years after the fraud claim accrued by operation of Ala. Code § 6-2-3.  This basis for ascribing fraudulent joinder to the inclusion of MMSI as a party defendant herein is without merit.

### III.    Conclusion.

For all of the foregoing reasons, the undersigned concludes that GMAC has failed to prove by clear and convincing evidence that MMSI was fraudulently joined.  In light of that determination, MMSI's citizenship must be considered in applying the diversity provisions of 28 U.S.C. § 1332.  It is undisputed that both Grady and MMSI are Alabama citizens, so the presence of this non-diverse defendant precludes the exercise of diversity jurisdiction.  On that basis, plaintiff's Motion to Remand (doc. 7) is **granted**, and this action is hereby **remanded** to the Circuit Court of Mobile County, Alabama pursuant to 28 U.S.C. § 1447(c), for further proceedings.

-15-

DONE and ORDERED this 26th day of December, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE